1
2
3
4
5

6                    UNITED STATES DISTRICT COURT

7                          DISTRICT OF NEVADA

8                              * * * * *

9   MARIAN K. PORTER,                    )
                                         )
10                      Plaintiff,       )   3:13-cv-00661-LRH-VPC
                                         )
11   vs.                                 )
                                         )
12   SHYAM K. CHETAL, individually and d/b/a )
     ADVANTAGE REAL ESTATE PRO;          )   ORDER
13   UNITED CAPITAL INVESTMENTS, INC.;   )
     SMARTTOUCH SYSTEMS, INC.; and       )
14   DOES 1-30, inclusive,               )
                                         )
15                      Defendants.      )
     _____)

16

17          Before the Court is Defendant Shyam K. Chetal ("Chetal"), individually and d/b/a

18   Advantage Real Estate Pro ("Advantage"); United Capital Investments, Inc., ("United"); and

19   Smarttouch Systems, Inc.'s ("SSI") (collectively "Defendants") Motion for Change of Venue.

20   Doc. #18.[1]  Plaintiff Marian K. Porter ("Porter") filed an Opposition (Doc. #19), to which

21   Defendants replied (Doc. #23).

22   **I.      Facts and Procedural History**

23          This is a contract dispute arising out of Defendants' alleged failure to pay the

24   maintenance fees owing and due on Porter's mining claims in Wyoming, thereby causing Porter

25   to permanently and irrevocably lose her rights thereto.  On December 2, 2013, Porter filed a

26   Complaint against Defendants in this Court on the basis of diversity jurisdiction.  *See* Doc. #1,

27   ¶ 6; 28 U.S.C. § 1332.  Porter alleges claims for breach of contract, tortious breach of contract,

28   fraud, negligence, and breach of the implied covenant of good faith and fair dealing.  *See* Doc.

_____

   [1] Refers to the Court's docket number.

1  #1, ¶¶ 51-107.  On April 23, 2014, Defendants filed a Motion for Change of Venue to the

2  Northern District of California.  Doc. #18.

3  **II.    Legal Standard**

4          Defendants seek transfer of venue pursuant to 28 U.S.C. § 1404(a).  Under § 1404(a), a

5  court may, for the convenience of parties and witnesses and in the interest of justice, transfer any

6  civil action to any other district where it might have been brought.  The district court has broad

7  discretion "to adjudicate motions for transfer according to an individualized, case-by-case

8  consideration of convenience and fairness."[2]  *Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S. 22, 23

9  (1988).  A party seeking to transfer venue pursuant to § 1404 bears the burden of establishing:

10 (1) the proposed district is a proper venue where the case might have been brought; and (2) the

11 proposed district is a "more appropriate forum for the action."  *See Operation: Heroes, Ltd. v.*

12 *Proctor and Gamble Prods., Inc.*, 903 F. Supp. 2d 1106, 1111 (D. Nev. 2012); *Jones v. GNC*

13 *Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).  "When the transferee venue is not clearly

14 more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be

15 respected."  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

16         In determining whether the transferee district would promote the convenience of parties

17 and witnesses, and serve the interests of justice, district courts consider the following case-

18 specific factors:

19         (1) the location where the relevant agreements were negotiated and executed,
           (2) the state that is most familiar with the governing law, (3) the plaintiff's choice
20         of forum, (4) the respective parties' contacts with the forum, (5) the contacts
           relating to the plaintiff's cause of action in the chosen forum, (6) the differences in
21         the costs of litigation in the two forums, (7) the availability of compulsory process
           to compel attendance of unwilling non-party witnesses, and (8) the ease of access
22         to sources of proof.  Additionally, the presence of a forum selection clause is a
           "significant factor" in the court's § 1404(a) analysis. . . . [Finally,] the relevant
23         public policy of the forum state, if any, is at least as significant a factor in the
           § 1404(a) balancing.
24

25

26         [2]  The Court notes that the discretion accorded the district court to grant a transfer under
   § 1404 is greater than that under the common law *forum non conveniens.*  The congressional
27 purpose in writing § 1404(a) was to lower the heavy burden on moving parties under the
   common law and "to permit courts to grant transfers upon a lesser showing of inconvenience,"
28 while maintaining the relevant balancing factors.  *See Norwood v. Kirkpatrick,* 349 U.S. 29, 32
   (1955).

1    *Jones*, 211 F.3d at 498-99 (citing *Stewart*, 487 U.S. at 29-33).

2    **III.    Discussion**

3          Although it is undisputed that this action might have been brought in the Northern

4    District of California,[3] the Court finds that Defendants have failed to establish that transfer of

5    venue is warranted.  An analysis of the *Jones* factors demonstrate that the Northern District of

6    California would not be clearly more convenient than the District of Nevada.

7          **1)    Location Where Relevant Agreements Were Negotiated and Executed**

8          The Court finds this factor indeterminate at this stage in the proceedings as the

9    negotiations and execution of the contract were performed by the parties in their respective

10   states.  On several occasions Chetal, either individually or on behalf of one of the Defendant

11   companies, faxed documents pertaining to the contract negotiations to Porter in Nevada.  *See*

12   Doc. #1, Ex. 1-3.  Additionally, the contract arguably became effective when Porter accepted and

13   returned Chetal's offer, which she received and executed in Nevada.  *See id.*, Ex. 2; Doc. #19,

14   p. 5.  While there is no indication that Defendants were ever physically present in Nevada, it also

15   does not appear that Porter was ever physically present in California.  *See* Doc. #18, p. 3-4;

16   Doc. #1, ¶ 1.  As such, the Court finds this factor is neutral and does not weigh in favor of

17   transfer.

18   ///

19   ///

20

21          [3] The general venue statute, 28 U.S.C. § 1391(b), provides that a civil action may be

22   brought in to: "(1) a judicial district in which any defendant resides, if all defendants are residents
     of the State in which the district is located; or (2) a judicial district in which a substantial part of

23   the events or omissions giving rise to the claim occurred, or a substantial part of property that is
     the subject of the action is situated."  Here, all Defendants reside in California; accordingly,

24   venue would be proper in the Northern District of California under § 1391(b)(1).  Additionally,
     Defendants do not challenge venue in the District of Nevada and they are not seeking transfer of

25   venue pursuant to 28 U.S.C. § 1406, which warrants transfer when the current venue is improper.

26   Regardless, venue appears to be proper in Nevada under § 1391(b)(2) as the contract negotiations
     and execution allegedly occurred in part in Nevada and the alleged harm to Porter occurred in

27   Nevada.  *See Myers v. Bennet Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (holding that a
     substantial part of the events giving rise to the claim occurred in Nevada when at least one of the

28   harms suffered by the plaintiff was felt in Nevada).

1           **2)      State Most Familiar with the Governing Law**

2           Although the Court need not determine at this stage in the proceedings which substantive

3   state law will govern the parties' dispute, the Court is unpersuaded by Defendants' repeated

4   assertion that California law governs.  Here, the alleged contract was for the sale of mining rights

5   in property located in Wyoming.  As such, Wyoming law would likely govern in the absence of a

6   more significant state relationship to the transaction and the parties.  *See Prime Ins. Syndicate,*

7   *Inc. v. Damaso*, 471 F. Supp. 2d 1087, 1094 (9th Cir. 2007) ("When sitting in diversity, a federal

8   court is obligated to apply the substantive law of the forum state in which it sits."); *Williams v.*

9   *United Servs. Auto. Ass'n*, 849 P.2d 265, 266 (Nev. 1993) (stating that Nevada has adopted the

10  substantial relationship test from the Restatement (Second) of Conflict of Laws § 188 for

11  conflict-of-law issues).  The most significant contacts to be taken into account to resolve such

12  conflict-of-law issues include: "(a) the place of contracting, (b) the place of negotiation, (c) the

13  place of performance, (d) the location of the subject matter to the contract, and (e) the domicile,

14  residence, nationality, place of incorporation and place of business of the parties."  *Williams*, 849

15  P.2d at 266 (citing *Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 790 (Nev. 1990)); *see*

16  *also* Restatement (Second) of Conflict of Laws § 188 (1971).

17          Here, factors (a), (b), and (e) are inconclusive as the relevant contacts are split between

18  both California and Nevada.  Moreover, factor (c) does not help the Court's determination as the

19  place of performance for the parties' respective obligations under the alleged contract are

20  California, Nevada, and Wyoming.  *See* Restatement (Second) of Conflict of Laws § 188,

21  Comment on Subsection (2) (1971) (stating that the place of performance bears little weight

22  when the performance by a party is divided between two or more states).  However, since

23  Wyoming is the situs of the subject matter of the contract, factor (d) weighs heavily in favor of

24  Wyoming law governing the dispute.  *See id.* (stating that when a contract deals with a specific

25  physical thing, such as land, the location of the thing is significant and that, "when the thing or

26  the risk is the principle subject of the contract, it can often be assumed that the parties . . . would

27  expect that the local law of the state where the thing or risk was located would be applied to

28  determine many of the issues arising under the contract").  Because Defendants fail to offer any

1    argument or evidence as to why California law would govern or why California law has a more

2    significant relationship to the transaction and the parties, the Court finds this factor weighs

3    against transfer.

4              **3)     Plaintiff's Choice of Forum**

5              A strong presumption exists in favor of Porter's choice of venue as the District of

6    Nevada. *See Piper Aircraft v. Reyno*, 454 U.S. 235, 255 (1981) (stating the strong presumption

7    in favor of plaintiff's choice of forum may be overcome when the other factors favor trial in

8    another forum); *see also* Norwood, 349 U.S. at 32 (noting that the revisions § 1404 made to

9    *forum non conveniens* did not change the presumption in favor of plaintiff's choice of forum and

10   stating, "[t]his is not to say that the relevant factors have changed or that the plaintiff's choice of

11   forum is not to be considered, but only that the discretion to be exercised is broader").  Here,

12   Porter is a domestic plaintiff that has chosen her home forum for trial.  As such, it is reasonable

13   to assume that Nevada is convenient for Porter.  The Court shall accord her choice of Nevada the

14   appropriate weight in favor of maintaining the current venue.

15             **4)     The Respective Parties' Contacts with the Forum**

16             The Court is not persuaded by Defendants' assertion that Defendants "have no connection

17   with the state of Nevada." *See* Doc. #18, p. 4; Doc. #23, p. 4.  According to the Complaint,

18   Chetal contacted Porter in Nevada with a proposal to send her an offer for the mining rights. *See*

19   Doc. #1, ¶ 16.  Moreover, Porter asserts that Chetal, on behalf of United, sent Porter an offer to

20   purchase the mining claims while she was in Nevada. *See id.*, ¶ 17; Doc. #19, p. 6.  The Court

21   finds that Defendants' deliberate transaction in this regard was a direct effort to invoke the

22   benefits of Nevada laws. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840

23   (9th Cir. 1986).  As such, Defendants had sufficient contact with Nevada to establish personal

24   jurisdiction in Nevada. *See id.* at 840 ("Purposeful availment requires some kind of affirmative

25   conduct by the defendant which allows or promotes the transaction of business within the forum

26   state.").  Therefore, the Court rejects Defendants' assertion that they have "no connection" with

27   Nevada. *See id.* at 839 (stating that in the absence of continuous and systematic contacts with the

28   forum state, a defendant may still have a strong relationship between the quality of contacts with

1  the forum state and the cause of action to constitute a significant relationship with the forum

2  state).  Because both parties have meaningful contacts with the chosen forum of Nevada, the

3  Court finds this factor does not support transfer.

4        **5)**    **The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum**

5        Here, Defendants do little more than assert that Porter's causes of action are based on

6  California law and a California contract.  *See* Doc. #18, p. 4; Doc. #23, p. 4.  The Court again

7  finds Defendants' assertions unpersuasive.  Porter does concede that some of the contacts

8  relating to her causes of action include Defendants' duties and the alleged breach of those duties

9  in California.  *See* Doc. #19, p. 6.  Defendants were physically in California when they allegedly

10 breached the contract.  *See* Doc. #1 ¶¶ 51-70.  Similarly, Defendants actions while residing in

11 California gave rise to Porter's claims against Defendants for tortious breach of contract, fraud,

12 negligence, and breach of the implied covenant of good faith and fair dealing.  *See* Doc. #1, ¶¶

13 71-107.  However, Defendants allegedly sent documents related to the contract to Porter in

14 Nevada.  *See* Doc. #1, Ex. 1-3.  Most important, the alleged damages related to Porter's claims

15 occurred in Nevada, giving Nevada a substantial connection thereto.  *See Myers*, 238 F.3d at

16 1076; *see also Raffaele v. Compagnie Generale Mar.*, 707 F.2d 395, 399 (9th Cir. 1983) ("A

17 court sitting in the district where the injury occurred . . . ordinarily will be the most efficient

18 forum.").  Therefore, this factor weighs against transfer.

19       **6)**    **The Differences in the Cost of Litigation in the Two Forums**

20       The Court is cognizant of the fact that all Defendants and Defendants' counsel reside in

21 California, thereby making litigation in Nevada more costly.  Nevertheless, Porter and her

22 counsel reside in Nevada and transferring the case to California would merely shift the costs of

23 litigation between the parties.  The record indicates that Defendant Chetal is the registered agent

24 of service for all Defendants and will likely be the key liability witness for each of the

25 Defendants as well.  *See* Doc. #1, ¶¶ 2-4.  As either venue would inconvenience one person to

26 arguably the same extent, the Court finds this factor does not support transfer of venue.  In this

27 regard, the Court agrees with Porter that a transfer to the Northern District of California would

28 appear to merely shift rather than eliminate the inconvenience to the witnesses and parties.  *See*

1   *Decker Coal Co.*, 805 F.2d at 843 (stating that when the liability witnesses and damage witnesses

2   reside in different states, a transfer to the state where the liability witnesses are located would

3   merely shift rather than eliminate the inconvenience).

4         **7)**    **The Availability of Compulsory Process to Compel Attendance of Unwilling**
                    **Non-Party Witnesses**

5

6        Defendants emphasize the location and convenience of crucial non-party witnesses, but

7   present no information as to the identities of these witnesses, or the nature, relevance, and

8   necessity of their testimony.  *See* Doc. #18, pp. 4-5; Doc. #23, p. 1, 4.  Indeed, Defendants may

9   be slightly inconvenienced if non-party witnesses are unwilling to attend proceedings in Nevada.

10  *See* Doc. #18, p. 4.  However, Defendants also acknowledge that deposition transcript testimony

11  may be used instead of live testimony if this situation were to arise.  *See id.*  Moreover, the

12  authority Defendants cite in support of the proposition that the convenience of non-party

13  witnesses is often given more weight than that of party witnesses, *Gundle Lining Constr. Corp. v.*

14  *Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994), involved a situation in

15  which non-party witnesses had the most information concerning the performance of the contract.

16  To the contrary here, because Chetal is the representative and owner of all Defendant companies,

17  Chetal is likely the most knowledgeable person concerning the contract.  As such, the Court is

18  not inclined to give the convenience of non-party witnesses more weight than that of the party

19  witnesses.  Therefore, the Court finds this factor does not support transfer.

20        **8)**    **The Ease of Access of Proof**

21       Again, Defendants assert that the critical witnesses for sources of proof are located in

22  California, but fail to provide any support for their position.  *See* Doc. #18, p. 4; Doc. #23, p. 5.

23  As such, the Court finds that the ease of access to sources of proof would be the same in either

24  venue.  A change in venue would merely shift the minor inconvenience to the parties as the

25  contract and relevant documents can easily be transmitted between California and Nevada.

26  ///

27  ///

28  //

1        **Forum Selection Clause**

2        Although the contract supposedly contains a California forum selection clause,[4]

3  Defendants concede that it is not mandatory.  *See* Doc. #18, p.4.  Assuming such a clause exists,

4  the Court is nevertheless not inclined to strictly enforce it given its permissive nature.  *See*

5  *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (stating that when venue is

6  specified with mandatory language the clause will be enforced, but when the language is not

7  mandatory the clause will generally not be enforced).

8        **Relevant Public Policy of the Forum State**

9        There is no indication that public policy and justice would be better served if this case

10  were transferred to California.  Defendants simply assert that California has a significant public

11  policy interest with respect to anti-deficiency litigation protecting borrowers and guarantors, but

12  fail to address the relevant public policy of Nevada.  *See* Doc. #18, p. 4-5.  Nevada has a strong

13  public policy interest in protecting potentially harmed residents of their state.  *See Burger King*

14  *Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985) ("A State [sic] generally has a 'manifest

15  interest' in providing its residents with a convenient forum for redressing injuries inflicted by

16  out-of-state actors," especially when the out-of-state actor purposefully derives a benefit from

17  activities in the forum state (citation omitted)).  Given the relief sought by Porter, the Court

18  believes the interest of Nevada outweighs the interest of California.  As such, the Court finds that

19  this factor does not support transfer.

20        Considering the aforementioned relevant factors, the Court finds that Defendants have not

21  met their burden of establishing the Northern District of California is clearly more convenient.

22  The proposed change in venue would merely shift the inconveniences on the respective parties.

23  As such, the Court will defer to Porter's choice of venue at this time.

24  ///

25  ///

26

27

28        [4] Defendants assert that there is a forum selection clause.  However, none of the exhibits submitted to the Court reveal the existence of such a clause.  *See* Doc. #1, Ex. 1-5.  Furthermore, Porter does not confirm or dispute the existence of a forum selection clause.

8

1       IT IS THEREFORE ORDERED that Defendants' Motion for Change of Venue

2   (Doc. #18) is hereby DENIED.

3       IT IS SO ORDERED.

4       DATED this 25th day of June, 2014.

5

6                                           _____

7                                           LARRY R. HICKS
                                            UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28