UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| MARIAN K. PORTER,<br><br>   Plaintiff,<br><br>v.<br><br>SHYAM K. CHETAL, individually and d/b/a ADVANTAGE REAL ESTATE PRO; UNITED CAPITAL INVESTMENT, INC. d/b/a NEVADA UNITED CAPITAL INVESTMENTS, INC.; SMARTTOUCH SYSTEMS, INC.; and DOES 1 through 30, inclusive,<br><br>   Defendants. | 3:13-cv-00661-LRH-VPC<br><br>ORDER |

  Before the Court is Plaintiff Marian K. Porter's ("Porter") Motion for Summary Judgment. Doc. #39.[1] Defendants Shyam K. Chetal ("Chetal") and Smarttouch Systems, Inc. ("SSI") filed an Opposition (Doc. #41), to which Porter Replied (Doc. #43).[2] Chetal's Opposition also included a request for additional time to conduct discovery under Federal Rule of Civil Procedure 56(f). Doc. #41.

**I. Facts and Procedural Background**

  This is a contract dispute in a diversity case in which Porter alleges that Chetal was involved in a fraudulent financing scheme with SSI, United Capital Investments, Inc. ("United"),

---

[1] Refers to the Court's docket number.

[2] Third-party Defendants George C. Schwelling and Walter J. Antonell also filed a Response (Doc. #40), but the Court previously granted their Motion to Dismiss Chetal's third-party complaint, thereby releasing Chetal's claims against these third-party defendants. *See* Doc. #42.

1  and Advantage Real Estate Pro ("Advantage"). *See* Doc. #1 ¶¶2-4, 21, 61-63, 72, 78, 95, 104.
2  Porter and her husband purchased the land at issue from the Bureau of Land Management
3  ("BLM") in 1986 and paid yearly annual license fees of $15,000 for twenty-six years. Doc. #39
4  at 2. Following the death of Porter's husband, and due to other financial hardships, she was
5  forced to seek a buyer for the land in 2013. *Id.* On August 20, 2013, Chetal—on behalf of
6  United—offered to purchase Porter's mining rights, which Porter claims were worth between $11
7  Billion and $22 Billion, and pay the required maintenance fees. Doc. 1, Ex. 1. In connection
8  with this offer, Chetal also provided documentary proof of his financial ability to pay. *Id.*, Ex. 3.
9  Porter allegedly relied on these documents for assurance of payment and accepted Chetal's offer.
10 *See* Doc. #1 ¶90. Thereafter, Chetal proffered a check for $276,480 to the BLM to cover the
11 maintenance fees, but the check was declined twice for insufficient funds and Porter permanently
12 and irrevocably lost all rights to her mining claims. *Id.* ¶39-41.
13       Porter alleges that none of the Defendants had the financial capability or intention to pay
14 the maintenance fees or purchase the mining claims. *Id.* ¶43. Porter alleges further that
15 Defendants intentionally perpetrated the financing scheme to cause Porter to lose her mining
16 claims, thereby enabling Chetal to purchase the claims directly from the BLM at a lower price.
17 *Id.* ¶¶44-46. On December 3, 2013, Porter filed a Complaint alleging breach of contract, tortious
18 breach of contract, fraud, negligence, and breach of the implied covenant of good faith and fair
19 dealing. *See id.*
20       Chetal has alleged that Schwelling made an oral promise on August 15, 2013, to make the
21 $276,480 payment in return for future rights to the mining operation. Doc. #21 at 3. Chetal
22 alleges that in reliance on this promise, he sent a check for the full amount to the BLM. *Id.* In an
23 October 16, 2014 Order, the Court granted Schwelling's Motion to Dismiss Chetal's third-party
24 complaint because any oral agreement between Chetal and the third-party defendants would have
25 been barred by the statute of frauds. Doc. #42. Porter filed her Motion for Summary Judgment
26 on September 10, 2014.
27 //
28 //

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). A motion for summary judgment can be complete or partial, and must identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On an issue as to which the nonmoving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there

1  must be evidence on which a jury could reasonably find for the party. *See id.* at 252.
2  "[S]peculative and conclusory arguments do not constitute the significantly probative evidence
3  required to create a genuine issue of material fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th
4  Cir. 1982).

**III.   Discussion**

   **A.   Additional Discovery Request Under Rule 56(f)**

Chetal argues that Porter's Motion should be denied because the parties have not had enough time to conduct discovery, and requests that before ruling on the Motion, the Court grant additional time for discovery under Federal Rule of Civil Procedure 56(f). Doc. #41. "Federal Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). Rule 56 permits a party to move for summary judgment twenty days after the commencement of the action. "Where, however, a summary judgment motion is filed so early in the litigation, before a party has had a realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." *Burlington N. Santa Fe R.R. Co. v. The Assiniboine and Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). "The facts supporting a Rule 56(f) motion must be set forth in an accompanying affidavit," and failure to attach such affidavit "is proper ground for denying relief." *Kitsap*, 314 F.3d at 1000 (citing *State of Cal., on Behalf of Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

Chetal did not attach an affidavit setting forth the facts sought by additional discovery. Additionally, Porter filed her Motion for Summary Judgment ten months after commencement of the action—well after the time permissible under Rule 56—and Chetal has not identified any effort to conduct discovery during this period. "[T]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past."

1  *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996).  Accordingly, the Court
2  denies Chetal's Rule 56(f) Motion.  *See Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998)
3  (finding that a district court only abuses its discretion in denying a Rule 56(f) motion "if the
4  movant diligently pursued its previous discovery opportunities, and if the movant can show how
5  allowing additional discovery would have precluded summary judgment"); *Assiniboine*, 323 F.3d
6  at 774 (granting a Rule 56(f) motion because the moving party "had no fair opportunity to
7  develop the record" on the matter, and showed "some basis for believing" that additional
8  discovery would yield relevant facts); *Visa Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784
9  F.2d 1472, 1475 (9th Cir. 1986) ("[T]he denial of a Rule 56(f) application is generally disfavored
10 where the party opposing summary judgment makes (a) a timely application which (b)
11 specifically identifies (c) relevant information, (d) where there is some basis for believing that
12 the information sought actually exists.").

### B. Motion for Summary Judgment

Having denied Chetal's request for additional discovery, the Court now considers Porter's Motion for Summary Judgment.

#### 1. Breach of Contract

To succeed on a claim for breach of contract, a plaintiff must establish three elements: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 494 F. Supp. 3d 913, 919-20 (D. Nev. 2006).  There is no doubt that Porter and Chetal entered into a valid contract; Chetal agreed to purchase Porter's land for $220 million secured by a down payment of $1 million to the bank by September 2, 2013. *See* Doc. #39, Ex. 1.  The parties also agreed that Chetal would pay the $276,480 in licensing fees due to the BLM no later than September 3, 2013.  *See id*, Ex. 2.  The evidence presented to the Court establishes clearly that Chetal breached the contract when his $276,480 check to the BLM was rejected twice for insufficient funds,[3] thereby causing Porter to lose her mining claims.

---

[3] Chetal states that he believed that third parties Schwelling and Antonell had deposited funds into his bank account to cover this check.  Schwelling and Antonell have both submitted affidavits stating that they never agreed to deposit such funds.  Doc. #40-1; Doc. #40-2.

1   *See id* at 3; Ex. 2. Porter has also established that she suffered damage as a result of this breach
2   because she lost mining claims to the land that she had held for twenty-seven years. *Id.* at 3.
3         Porter has met her burden to establish that no genuine disputes of material fact remain on
4   her breach of contract claim. *Celotex*, 477 U.S. at 323. Chetal has failed to rebut Porter's breach
5   of contract claim by pointing to facts supported by the record establishing a genuine dispute of
6   material fact. *Reese*, 208 F.3d at 738. Accordingly, the Court grants Porter's Motion for
7   Summary Judgment as to her claim for breach of contract.
8         **2.   Fraud**
9         To succeed on a claim for fraud, a plaintiff must establish five elements: (1) a false
10  representation by the defendant; (2) defendant's knowledge or belief that the representation is
11  false; (3) defendant's intention to induce the plaintiff to act or refrain from acting in reliance
12  upon the misrepresentation; (4) plaintiff's justifiable reliance; and (5) damage to the plaintiff.
13  *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992).
14        The central questions here are whether Chetal had knowledge or belief that he did not
15  have sufficient funds to cover the check for $276,480 to the BLM, and whether Chetal had the
16  intention to induce Porter to act or refrain from acting in reliance on that representation. Porter
17  argues that the "sole purpose" of Chetal's representation that he would pay the BLM fees "was to
18  mislead and defraud [Porter] into believing Chetal, SSI, and Continental were engaged in an
19  authentic endeavor to provide the necessary funding with which to purchase [Porter's] mining
20  rights." Doc. #39 at 4. Porter has not presented any evidence that Chetal in fact had knowledge
21  that his account had insufficient funds, or that he had the intent to induce Porter's reliance.
22  Chetal has argued that he believed that his account would have sufficient funds based on the
23  representations of Schwelling and Antonell. *See* Doc. #21 at 3. Although the Court dismissed
24  Chetal's cross-complaint against Schwelling and Antonell, it did so largely because any oral
25  agreement between Chetal and Schwelling and Antonell would have been barred by the statute of
26  frauds. *See* Doc. #42 at 5.
27        There remain disputed issues of material fact as to whether Chetal had knowledge and
28  belief that his account had insufficient funds, and whether he intended to induce Porter to act or

1    refrain from acting in reliance on his representation that he would pay the BLM fees. Thus, there
2    are classic questions of fact to be determined by a jury at trial. Accordingly, the Court denies
3    Porter's Motion for Summary Judgment as to her fraud claim. *See Allied Fidelity Ins. Co. v.*
4    *Pico*, 656 P.2d 849, 580 (Nev. 1983) (denying summary judgment on a fraud claim because
5    disputed issues of fact remained as to whether defendant's representations formed the basis for
6    the bargain that was breached); *Harrison v. Rodriguez*, 701 P.2d 1015, 1016 (Nev. 1985)
7    (finding in a fraud claim that "[t]he intent with which the statements were made is an issue of
8    fact for the jury to resolve").

9    **3.    Negligence**

10   "[T]o prevail on a traditional negligence theory, a plaintiff must establish that (1) the
11   defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach
12   was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *DeBoer v.*
13   *Senior Bridges of Sparks Family Hosp.*, 282 P.3d 727, 732 (Nev. 2012).

14   The central question here is whether Chetal owed Porter a duty of care, because if such a
15   duty existed, the evidence would likely support the other elements of Porter's negligence claim.
16   Although the Court has found that Chetal had a contract-based duty to pay Porter's licensing fee
17   to the BLM, Porter has not established that Chetal owed her a negligence-based duty of care.
18   Regardless, a plaintiff "cannot recover on both a contract and tort theory." *Tate v. U. Med. Ctr.*
19   *of S. Nev.*, No. 2:09-cv-1748, 2010 WL 3829221, at *9 (D. Nev. Sept. 24, 2010). Accordingly,
20   the Court denies Porter's Motion for Summary Judgment as to her negligence claim.

21   **4.    Breach of Implied Covenant of Good Faith and Fair Dealing**

22   The covenant of good faith and fair dealing means "that each party impliedly agrees not
23   to do anything to destroy or injure the right of the other to receive the benefits of the contract."
24   *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991) (quoting jury
25   instructions). "When one party performs a contract in a manner that is unfaithful to the purpose
26   of the contract and the justified expectations of the other party are thus denied, damages may be
27   awarded against the party who does not act in good faith." *Id.* "[G]ood faith is a question of
28   fact." *Consol. Generator-Nev., Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev.

1998) (denying summary judgment on implied covenant of good faith claim because the court had found genuine issues of material fact as to other contract-based claims). However, "when there is no factual basis for concluding that [a defendant] acted in bad faith, a court may determine the issue of bad faith as a matter of law." *Andrew v. Century Sur. Co.*, No. 2:12-cv-0978, 2014 WL 1764740, at *10 (D. Nev. Apr. 29, 2014) (citing *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1355 (Nev. 1986)).

Neither party has submitted evidence to resolve the disputed issue of material fact as to whether Chetal breached the implied covenant of good faith and fair dealing when he breached the contract between the parties. Chetal has argued, however, that his belief that his account had sufficient funds to cover the check to the BLM was a mistake based on the representations of third parties. A jury could reasonably find that Chetal's mistake was made in good faith. "[A] good faith mistake is no basis for a claim that the defendant violated the covenant of good faith and fair dealing." *McAdam v. State Nat'l Ins. Co., Inc.*, 28 F. Supp. 3d 1110, 1125 (S.D. Cal. 2014). Additionally, it is well established that "the question of good faith is a question of fact." *Med. Providers Fin. Corp. II v. New Life Ctrs., LLC*, 818 F. Supp. 1271, 1275 (D. Nev. 2011). Thus, these questions of fact are properly decided by a jury at trial. Accordingly, the Court denies Porter's Motion for Summary Judgment as to her claim for breach of the implied covenant of good faith and fair dealing.

### 5. Tortious Breach of Contract

A plaintiff can establish a claim for tortious breach of contract when:

> (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.

*Erlich v. Menezes*, 87 Cal. Rptr. 2d 886, 21 Cal. 4th 543, 553-54 (1999). "State claims for tortious breach of contract have been recognized in Nevada as a tort claim of breach of the implied covenant of good faith and fair dealing." *Chavez v. Cal. Reconveyance Co.*, No. 2:10-cv-0325, 2010 WL 2545006, at *4 (D. Nev. June 18, 2010). "Tort liability does not arise 'unless

there is a special relationship between the tort-victim and the tortfeasor.'" *Id.* (quoting *State v. Sutton*, 103 P.3d 8, 19 (Nev. 2004)).

To support a claim for tortious breach of contract, Porter would need to establish that the contract breach was accomplished by a tort, such as fraud or breach of the implied covenant of good faith and fair dealing. The Court has denied Porter's Motion for Summary Judgment as to her claims for fraud and breach of the implied covenant of good faith and fair dealing because disputed issues of material fact remain that must be resolved by a jury. Accordingly, the Court denies Porter's Motion for Summary Judgment as to her claim for tortious breach of contract.[4]

## IV.  Conclusion

IT IS THEREFORE ORDERED that Porter's Motion for Summary Judgment (Doc. #39) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Chetal's request for additional discovery under Rule 56(f) (Doc. #41) is DENIED.

IT IS FURTHER ORDERED that the parties shall file a proposed joint pretrial order pursuant to Local Court Rules 16-3 and 16-4 within forty-five (45) days of the entry of this order.

IT IS SO ORDERED.

DATED this 2nd day of February, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[4] Because some of Porter's claims involve disputes of material fact that must be resolved by a jury, the Court declines to consider Porter's request for punitive damages at this time.

9