UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| MARIAN K. PORTER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SHYAM K. CHETAL, individually and d/b/a ADVANTAGE REAL ESTATE PRO; UNITED CAPITAL INVESTMENT, INC. d/b/a NEVADA UNITED CAPITAL INVESTMENTS, INC.; SMARTTOUCH SYSTEMS, INC.; and DOES 1 through 30, inclusive,<br><br>　　　　Defendants. | 3:13-cv-00661-LRH-VPC<br><br>ORDER |

Before the court is plaintiff Marian Porter's motion to voluntarily dismiss her remaining claims without prejudice. ECF No. 94.[1] Defendants did not respond. Because dismissing Porter's remaining claims will not prejudice the defendants, the court will grant her motion. For the sake of clarity, the court will also elaborate on its prior summary-judgment order (ECF No. 44) in order to clarify that the court granted Porter partial summary judgment against both Shyam Chetal and United Capital Investments, Inc. on her breach-of-contract claim.

**I.　Background**

This is a contract dispute in a diversity case in which Porter alleges that Chetal was involved in a fraudulent financing scheme with defendants Smarttouch Systems, Inc. ("SSI"),

---

[1] This citation refers to the court's docket number.

1  and United Capital Investments, Inc. ("United").[2] *See* ECF No. 1. Porter and her husband
2  purchased the land at issue from the Bureau of Land Management ("BLM") in 1986 and paid
3  yearly annual license fees of $15,000 for twenty-six years. ECF No. 39 at 2. Following the death
4  of Porter's husband, and due to other financial hardships, she was forced to seek a buyer for the
5  land in 2013. *Id*. On August 20, 2013, Chetal—on behalf of United—offered to purchase Porter's
6  mining rights, which Porter claims were worth between $11 billion and $22 billion, and pay the
7  required BLM maintenance fees. ECF No. 1, Ex. 1. In connection with this offer, Chetal also
8  provided documentary proof of his financial ability to pay. *Id*., Ex. 3. Porter allegedly relied on
9  these documents for assurance of payment and accepted Chetal's offer. *See* ECF No. 1 at 17.

10  Thereafter, Chetal proffered a check for $276,480 to the BLM to cover the maintenance
11  fees, but the check was declined twice for insufficient funds, and Porter permanently and
12  irrevocably lost all rights to her mining claims. *Id*. at 8. Along with breach of contract, Porter
13  brought claims for fraud, negligence, breach of the implied covenant of good faith and fair
14  dealing, and tortious breach of contract. *Id*.

15  Chetal filed a third-party complaint[3] against George C. Schwelling, Schwelling
16  Recruiting Services, and Walton J. Antonell. ECF No. 21. Chetal argued that these third-party
17  defendants were liable to him because they allegedly agreed to provide the funds necessary to
18  cover the BLM maintenance-fee check. The third-party defendants moved to dismiss Chetal's
19  claims against them. ECF No. 24. The court granted their motion but also granted Chetal leave to
20  file an amended third-party complaint within 20 days of the order. ECF No. 42. Because Chetal
21  failed to file an amended complaint, Schwelling, Schwelling Recruiting Services, and Antonell
22  are no longer parties to this case. *See* ECF No. 44 at 1 n. 2.

---

[2] Throughout this litigation, Porter has also referred to Advantage Real Estate Pro ("Advantage"), which she alleges is the fictitious name that Chetal uses for his real-estate brokerage. *See* ECF No. 1 at 2; ECF No. 39 at 6. Porter has never alleged that Advantage is a separate legal entity capable of being sued, and Advantage is not a separate, distinct defendant in this litigation.

[3] Chetal erroneously referred to his complaint as a cross complaint, and the parties named in the complaint have at various times been referred to as cross defendants. Chetal's complaint, however, was a third-party complaint and Schwelling, Schwelling Recruiting Services, and Antonell were therefore third-party defendants. *See* Fed. R. Civ. P. 14.

Porter eventually moved for summary judgment, which the court granted only on her breach-of-contract claim against Chetal and United but denied on all other claims. ECF No. 42. She now moves to dismiss her remaining claims—fraud, negligence, breach of the implied covenant of good faith and fair dealing, and tortious breach of contract—against all defendants without prejudice.

**II.     Discussion**

Before addressing Porter's motion, the court will elaborate on its decision to grant Porter partial summary judgment on her breach-of-contract claim in order to clarify what claims remain against which defendants.

    **A.     Summary judgment on breach-of-contract claim**

Porter's breach-of-contract claim was based on a written agreement between herself and United; however, she brought the claim against both United and Chetal under a corporate-veil piercing/alter-ego theory. *See* ECF No. 1 at 10; ECF No. 39 at 4. While the court granted Porter summary judgment on this claim, the order did not address the alter-ego theory or specify whether the court was granting summary judgment against both United and Chetal. *See* ECF No. 44 at 5–6. Because the court intended to grant summary judgment in favor of Porter against both defendants, the court will elaborate on its earlier order.

In Porter's motion for summary judgment, she acknowledged that she entered into a contract to sell her mining rights with United. It is undisputed that Chetal, in his capacity as United's president and CEO, negotiated this deal with Porter and provided her the signed offer that she eventually accepted. ECF No. 39-1 at 2; ECF No. 39-3 at 12. Porter has argued throughout this litigation that United and Chetal are alter egos, based in part on Chetal's use of a personal check to pay the BLM maintenance fees.[4] ECF No. 1 at 10; ECF No. 39 at 3.

Under Nevada law, a plaintiff may establish that an individual is a corporation's alter ego and thus pierce the corporate veil by showing all of the following: "(1) [t]he corporation [is]

---

[4] Porter also claims that SSI and United are alter egos. *See* ECF No. 39 at 6. However, SSI was not a party to the Porter-United contract at issue, and SSI is not included in Porter's breach-of-contract claim. All of her allegations that SSI and Chetal are alter egos are connected to her tort-based claims and are therefore not presently relevant.

influenced and governed by the person asserted to be its alter ego[;] (2) [t]here [is] such unity of interest and ownership that one is inseparable from the other; and (3) [t]he facts [are] such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice." *Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 496 (Nev. 1998) (quoting *McCleary Cattle Co. v. Sewell*, 317 P.2d 957, 959 (Nev. 1957), *overruled on other grounds by Callie v. Bowling*, 160 P.3d 878 (Nev. 2007)); *see also* Nev. Rev. Stat. § 78.747(2) (codifying this test). The Nevada Supreme Court has admonished that "the corporate cloak is not lightly thrown aside." *Baer v. Amos J. Walker, Inc.*, 452 P.2d 916, 916 (Nev. 1969).

Here, the undisputed facts demonstrate that United and Chetal are alter egos. United is a California corporation, which lists its principal place of business as Chetal's residential address. ECF No. 1 at 2.[5] Chetal is listed as the corporation's registered agent at the same address. *Id*. Chetal's own offer letter includes United's letterhead, identifies him as United's president and CEO, and is signed by him in this capacity. *See* ECF No. 39-1 at 2. Nonetheless, it is undisputed that Chetal issued a personal check to pay the BLM maintenance fees. *See* ECF No. 39-3 at 13. Further, his offer letter to Porter consistently refers to his personal purchase of the mining rights, acknowledging that he will "conduct business under [his] holding [c]ompany United . . . ." *See* ECF No. 39-1 at 2. Similarly, a later note from Chetal to a BLM officer states that the mining rights would be "transferred to Shyam Chetal," making no mention of United. ECF No. 39-3 at 14.

Based on these facts, it is clear that Chetal and United—both objectively and in Chetal's own perception—were completely interchangeable. He was operating towards his own interests in purchasing the mining rights and even used his own personal financial account to achieve this goal. Under these circumstances, upholding the corporate veil and preventing Porter from recovering against Chetal would only promote injustice. Therefore, in finding that Porter's agreement with United was breached, the court's grant of partial summary judgment applies to both Chetal and United.

---

[5] United admitted to these allegations in its answer to Porter's complaint. *See* ECF No. 6 at 1.

4

### B. Motion to voluntarily dismiss remaining claims

Porter seeks voluntary dismissal by court order pursuant to FRCP 41(a)(2). "[A] district court should grant a motion for voluntary dismissal unless a defendant can show that it will suffer some plain legal prejudice as a result." *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987). Defendants have not responded to Porter's motion and have therefore not asserted that they would be prejudiced by her requested dismissal. Accordingly, the court will grant Porter's motion and dismiss the remaining claims—fraud, negligence, breach of the implied covenant of good faith and fair dealing, and tortious breach of contract—against Chetal, United, and SSI without prejudice.

In turn, the only remaining issue in this case is damages on Porter's successful breach-of-contract claim against Chetal and United. Because SSI was not included in this claim and all other claims are being dismissed, it is no longer a party to this action.

The court will order Porter, Chetal, and United to submit a proposed joint pretrial order in compliance with Local Rule 16-3(b) within 45 days of the date of this order.

### III. Conclusion

IT IS THEREFORE ORDERED that plaintiff Marian Porter's motion to voluntarily dismiss her remaining claims without prejudice (ECF No. 94) is GRANTED.

IT IS FURTHER ORDERED that all of Porter's remaining claims—fraud, negligence, breach of the implied covenant of good faith and fair dealing, and tortious breach of contract—are dismissed without prejudice as to Shyam Chetal, Smarttouch Systems, Inc., and United Capital Investments, Inc.

IT IS FURTHER ORDERED that Porter, Chetal, and United shall submit a proposed joint pretrial order in compliance with Local Rule 16-3(b) within 45 days of the date of this order.

IT IS SO ORDERED.

DATED this 28th day of November, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE