1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

8   MARIAN K. PORTER,

9          Plaintiff,                                    3:13-cv-00661-LRH-VPC

10         v.                                            ORDER

11   SHYAM K. CHETAL, individually and d/b/a
12   ADVANTAGE REAL ESTATE PRO;
     UNITED CAPITAL INVESTMENT, INC.
13   d/b/a NEVADA UNITED CAPITAL
     INVESTMENTS, INC.; SMARTTOUCH
14   SYSTEMS, INC.; and DOES 1 through 30,
15   inclusive,

16         Defendants.

17         In its last order, the court notified defendants Shyam K. Chetal and United Capital

18   Investments, Inc. ("United") of its intent to grant plaintiff Marian K. Porter summary judgment

19   on damages on her breach-of-contract claim in the amount of two-hundred million dollars

20   ($200,000,000.00). ECF No. 104. The court also ordered Defendants to show cause within 21

21   days of its order why it should not grant Porter this relief. *Id.* Defendants have failed to respond,

22   and the undisputed facts demonstrate that Porter suffered damages of at least two-hundred

23   million dollars, which she was unable to mitigate due to the loss of her mining rights. The court

24   will therefore grant summary judgment on damages and direct the clerk of court to enter

25   judgment.

26   **I.    Background**

27         This is a contract dispute in a diversity case in which Porter alleges that Chetal was

28   involved in a fraudulent financing scheme with defendants Smarttouch Systems, Inc. ("SSI"),

and United Capital Investments, Inc. ("United").[1] *See* ECF No. 1. Porter and her husband purchased the land at issue from the Bureau of Land Management ("BLM") in 1986 and paid yearly annual license fees of $15,000 for twenty-six years. ECF No. 39 at 2. Following the death of Porter's husband, and due to other financial hardships, she was forced to seek a buyer for the land in 2013. *Id.* On August 20, 2013, Chetal—on behalf of United—offered to purchase Porter's mining rights, which Porter claims were worth between $11 billion and $22 billion, and pay the required BLM maintenance fees. ECF No. 39-1. In connection with this offer, Chetal also provided documentary proof of his financial ability to pay. ECF No. 39-3. Porter relied on these documents for assurance of payment and accepted Chetal's offer.

Thereafter, Chetal proffered a check for $276,480 to the BLM to cover the maintenance fees, but the check was declined twice for insufficient funds, and Porter permanently and irrevocably lost all rights to her mining claims. *See* ECF No. 39-2. Along with breach of contract, Porter brought claims for fraud, negligence, breach of the implied covenant of good faith and fair dealing, and tortious breach of contract. ECF No. 1.

Chetal filed a third-party complaint[2] against George C. Schwelling, Schwelling Recruiting Services, and Walton J. Antonell. ECF No. 21. Chetal argued that these third-party defendants were liable to him because they allegedly agreed to provide the funds necessary to cover the BLM maintenance-fee check. The third-party defendants moved to dismiss Chetal's claims against them. ECF No. 24. The court granted their motion but also granted Chetal leave to file an amended third-party complaint within 20 days of the order. ECF No. 42. Because Chetal failed to file an amended complaint, Schwelling, Schwelling Recruiting Services, and Antonell are no longer parties to this case. *See* ECF No. 44 at 1 n. 2.

---

[1] Throughout this litigation, Porter has also referred to Advantage Real Estate Pro ("Advantage"), which she alleges is the fictitious name that Chetal uses for his real-estate brokerage. *See* ECF No. 1 at 2; ECF No. 39 at 6. Porter has never alleged that Advantage is a separate legal entity capable of being sued, and Advantage is not a separate, distinct defendant in this litigation.

[2] Chetal erroneously referred to his complaint as a cross complaint, and the parties named in the complaint have at various times been referred to as cross defendants. Chetal's complaint, however, was a third-party complaint and Schwelling, Schwelling Recruiting Services, and Antonell were therefore third-party defendants. *See* Fed. R. Civ. P. 14.

Porter eventually moved for summary judgment, which the court granted only on her breach-of-contract claim against Chetal and United[3] but denied on all other claims. ECF No. 44. After the court notified Porter that it intended to dismiss this action for want of prosecution (ECF No. 93), she timely filed a motion to voluntarily dismiss these remaining claims (ECF No. 94), which the court granted (ECF No. 95). Because the court's grant of partial summary judgment on Porter's contract claim only addressed liability and did not reach the issue of damages, the court ordered Porter, Chetal, and United to submit a proposed joint pretrial order on this sole remaining issue. ECF No. 95 at 5.

After none of the parties submitted the proposed order, the court ordered them to attend a telephonic status conference on February 8, 2017. ECF No. 97. Due to the fact that several court orders mailed to Chetal had been returned as undeliverable,[4] the court also ordered plaintiff's counsel to make a good-faith attempt to ascertain the availability and address of Chetal and to provide him with a copy of the status-conference order. *Id*.

Neither Chetal nor any representative for himself or United appeared at the status conference. ECF No. 99. The court therefore ordered Porter to move for entry of judgment no later than February 18, 2017, and to again make a good-faith attempt to locate Chetal and serve him with her motion. *Id*. The court set February 28, 2017, as the deadline for Chetal's response. *Id*. Porter timely moved for entry of judgment pursuant to Federal Rule of Civil Procedure 54, but Chetal failed to respond.

After considering Porter's motion, the court concluded that, because the court never granted summary judgment on damages for her breach-of-contract claim, Rule 54 was not the proper procedural mechanism for her desired relief. ECF No. 104 at 2. Instead, the court gave Chetal and United notice of its intent to *sua sponte* grant summary judgment in favor of Porter in the amount of two-hundred million dollars ($200,000,000.00). *Id*. (citing Fed. R. Civ. P. 56(f)). The court listed the points of undisputed fact that it intends to rely upon in granting summary

---

[3]  In its November 28, 2016 order, the court clarified that its grant of partial summary judgment applied to both Chetal and United, which the court ruled was Chetal's alter ego. ECF No. 95.

[4]  *See* ECF Nos. 96, 98, 101, 103, and 105.

1  judgment and ordered Chetal to show cause as to why the court should not grant this relief.

2  Chetal and United have failed to respond.

3  **II.      Legal standard**

4         Summary judgment is appropriate only when "the pleadings, depositions, answers to

5  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

6  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

7  of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence,

8  together with all inferences that can reasonably be drawn therefrom, must be read in the light

9  most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*

10  *Corp.*, 475 U.S. 574, 587 (1986); *Cty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154

11  (9th Cir. 2001).

12         The moving party bears the burden of informing the court of the basis for its motion,

13  along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v.*

14  *Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the

15  moving party must make a showing that is "sufficient for the court to hold that no reasonable

16  trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d

17  254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D.

18  Cal. 2001).

19         To successfully rebut a motion for summary judgment, the non-moving party must point

20  to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v.*

21  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might

22  affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

23  U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue,

24  summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A

25  dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

26  jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere

27  existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to

28

1   establish a genuine dispute; there must be evidence on which the jury could reasonably find for

2   the plaintiff. *See id*. at 252.

3   **III.    Discussion**

4          The court finds that the undisputed facts of this case establish that Porter is entitled to

5   summary judgment for damages on her contract claim in the amount of $200 million. Chetal and

6   his alter-ego corporation United entered into a contract with Porter to purchase her mining rights

7   for $220 million. As part of this contract, Chetal committed to paying the BLM $276,480 in

8   licensing fees for the mining rights by September 3, 2013. As the court held in its previous

9   summary-judgment order, Chetal and United breached the contract when Chetal's check for the

10  licensing fees was rejected twice due to insufficient funds, resulting in Porter losing her mining

11  rights.

12         In turn, Porter did not receive the $220 million contract price from Chetal or United. And

13  because she had lost the mining rights, Porter was not able to mitigate her damages by selling

14  them for less than $220 million to another buyer.

15         Porter has attested that the loss of her mining rights has cost her "a loss of

16  $200,000,000.00." ECF No. 100–1 at 3. It is not immediately apparent to the court why Porter is

17  setting her damages at an amount lower than the contract price. One possible explanation is that

18  $200 million represents the offer from another buyer that she attests she turned down in favor of

19  Chetal's higher offer. *See* ECF No. 1 at 4; ECF No. 1-2. But because Porter is seeking a sum

20  lower than the contract price, the court finds that this is not a dispute of material fact that would

21  prevent entry of summary judgment.

22         Finally, the court acknowledges that, based on the mailings returned from Chetal's last

23  known address as undeliverable, he is likely unaware of the court's notice of its intent to grant

24  Porter summary judgment. However, because Chetal has previously appeared in this case to

25  defend against Porter's claims, service by mail to his last known address provided adequate

26  notice, even if he did not actually receive the court's order. *Carter v. McGowan*, 524 F. Supp.

27  1119, 1121 (D. Nev. 1981); 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

28  *Procedure* § 1148 (4th ed.).

1    Accordingly, the court will grant Porter summary judgment on damages on her breach-

2 of-contract claim in the amount of two-hundred million dollars ($200,000,000.00).

3 **IV.    Conclusion**

4    IT IS THEREFORE ORDERED that plaintiff Marian K. Porter is granted partial

5 summary judgment against defendants Shyam K. Chetal and United Capital Investments, Inc.,

6 for damages on her breach-of-contract claim in the amount of two-hundred million dollars

7 ($200,000,000.00).

8    IT IS FURTHER ORDERED that the clerk of the court shall enter judgment in favor of

9 plaintiff Marian K. Porter and against defendants Shyam K. Chetal and United Capital

10 Investments, Inc., in the amount of two-hundred million dollars ($200,000,000.00).

11    IT IS FURTHER ORDERED that the clerk of the court shall close this case.

12    IT IS SO ORDERED.

13

14    DATED this 27th day of March, 2017.

15    _____
         LARRY R. HICKS
16         UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28